UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ZORYAN INSTITUTE FOR CONTEMPORARY ARMENIAN RESEARCH & DOCUMENTATION, *a Massachusetts nonprofit corporation*, Plaintiff, <br><br> v. <br><br> FOX POINT PICTURES, LLC, *a Rhode Island limited-liability company*; THEODORE J. BOGOSIAN; and DOES 1-50, inclusive, Defendants. | C.A. No. 24-cv-109-JJM-LDA |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

This case involves an agreement involving Plaintiff Zoryan Institute for Contemporary Armenian Research and Documentation ("Zoryan") and the Defendants Fox Point Pictures, LLC ("Fox Point") and Theodore J. Bogosian (collectively "Defendants"). Zoryan claims that Fox Point and Mr. Bogosian breached the contract when it did not give Zoryan proper credit for its funding and involvement in a documentary movie about the Armenian Genocide. It also alleges that Mr. Bogosian breached his fiduciary duty to Zoryan because he had been a member of the Zoryan Board of Directors. Zoryan filed a six count Amended Complaint

("Complaint") against the Defendants. ECF No. 20.[1] The Defendants respond with two Amended Counterclaims ("Counterclaims") against Zoryan. ECF No. 23.[2]

Before the Court are two motions: Defendants' Motion to Dismiss Counts III through VI of the Amended Complaint (ECF No. 24) and Zoryan's Motion to Dismiss Defendants' Counterclaims. ECF No. 27.

## I.   FACTUAL BACKGROUND

In 1989, Mr. Bogosian produced a documentary about the Armenian Genocide entitled "An Armenian Journey." In 2015, he sent a letter to the Board of Directors of Zoryan[3] requesting funding to make a sequel. ECF No. 20 at 3-4, ¶¶ 13-14.

Zoryan and Fox Point entered a contract to produce the film. *Id.* at 4, ¶ 16. Under the agreement, Fox Point needed to follow the PBS[4] Production Guidelines and National Program Standards and Practices for a primetime documentary. ECF No. 23 at 2, ¶ 7. The contract required Zoryan to advance $20,000 for an initial budget, supply ongoing support, organize, and conduct fundraisers for the film, and absorb the cost of the film. ECF No. 20 at 4, ¶ 17.

---

[1] The six counts are: Breach of Contract (Count I against Fox Point), Breach of Implied Duty of Good Faith and Fair Dealing (Count II against Fox Point), Unjust Enrichment (Count III), Breach of Fiduciary Duties (Count IV, against Mr. Bogosian), Alter Ego (Count V), and Fraudulent Inducement (Count IV)

[2] The two counterclaims are: Breach of Contract (Count I) and Breach of Implied Duty of Good Faith and Fair Dealing (Count II).

[3] Mr. Bogosian was the sole member and manager of Fox Point. ECF No. 23 at 2, at ¶ 5. Zoryan maintains that Mr. Bogosian was also a Zoryan Board Member from 2016 to 2019 and breached his fiduciary duties owed to Zoryan. ECF No. 29 at 6, ¶ 25.

[4] Fox Point had consulted with Rhode Island PBS about broadcasting the film Mr. Bogosian wanted to produce. ECF No. 20 at 3-4, ¶ 14.

On the other hand, the contract required Fox Point to draft a treatment for the film in consultation with Zoryan scholars, and "to give Zoryan full credit and acknowledgment in the film and associated publicity for its role in the production of the film." *Id.* The film was screened for the first time in 2018 at Zoryan's 35th anniversary gala. *Id.* at 4-5, ¶ 18.

In 2022, Defendants sent Zoryan a new version of the film that Zoryan alleges did not meet the terms of the agreement. *Id.* at 5, ¶ 20. Zoryan contends that the 2022 film, unlike its 2018 version, did not use its source material or reference Zoryan, listing it only as a financial contributor. *Id.* Specifically, Zoryan alleges that Defendants' 2022 film breached the agreement because it did not name Zoryan as a co-producer and funder of the film, place Zoryan's logo in the film, and credit Zoryan and its scholars for its contributions to the study of the Armenian Genocide and universal human rights. *Id.* at 6, ¶ 24. Zoryan reached out to the Defendants about their concerns, but the Defendants did not make any changes and screened the film on October 13, 2022, at the UCLA Promise Armenian Institute. *Id.* at 5-6, ¶ 23.

Fox Point responded that the 2018 version was not the final film but was a "rough assembly" "not within the scope of the contract [with Zoryan]" and did not comply with the PBS and National Broadcasting Standards. ECF No. 23 at 3, ¶¶ 11, 20.

Because of Fox Point's actions, Zoryan alleges that it lost major donors and suffered reputational harm. ECF No. 20 at 6, ¶ 26. Zoryan issued cease-and-desist orders aimed at the 2022 version of the film. ECF No. 23 at 3, ¶ 20. Contrary to the

3

terms of the contract, Zoryan contacted PBS directly to get the 2018 uncompliant version broadcasted. *Id.* at 4, ¶ 21. Defendants allege that Zoryan interfered with the film's promotion and distribution to gain editorial control and compel Fox Point to include only material from scholars that it favored (*id.* ¶ 22), that these actions were against the express contract terms (*id.* ¶ 23), and that because of Zoryan's actions, Fox Point has suffered monetary and reputational harm. *Id.* ¶ 24.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original)

4

(internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

### III.   DISCUSSION

The parties present five issues. 1) whether Zoryan plausibly states a claim that Defendants were unjustly enriched; 2) whether Zoryan plausibly states a claim that Mr. Bogosian breached his fiduciary duties; 3) whether Zoryan plausibly asserts a claim that Mr. Bogosian's intermingling with Fox Point made the LLC his alter ego; 4) whether Zoryan plausibly asserts a claim that Defendants fraudulently induced Zoryan to enter the contract; 5) and whether Fox Point's Counterclaims plausibly allege that Zoryan breached the contract and the implied covenant of good faith and fair dealing. The Court addresses each issue in turn.

#### A.  Whether the Complaint Plausibly Alleges an Unjust Enrichment Claim

Count III of the Complaint alleges that Defendants were unjustly enriched at Zoryan's expense. ECF No. 20 at 9, ¶¶ 40, 43. Zoryan's main contention is that Fox Point fully benefitted from the money Zoryan contributed to the film but did not acknowledge and credit Zoryan as a co-producer, as the contract required. *Id.* at 10, ¶ 46. Zoryan also maintains that Mr. Bogosian accepted this benefit and used it to promote his own name in the film, contrary to the terms of the contract. *Id.* Defendants move to dismiss the unjust enrichment claim against only Mr. Bogosian because Zoryan cannot show that Mr. Bogosian received any monies. ECF No. 24 at

5

8. They also maintain that the money Zoryan provided for the film was paid under its contract with Fox Point, to which Mr. Bogosian is not a party. Therefore, he cannot have been unjustly enriched because he was not contractually obligated in relation to the film. *Id.* at 9.

A complaint must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. It is well settled in Rhode Island that:

> [t]o recover for unjust enrichment, a claimant must prove (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.

*South Cnty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 211 (R.I. 2015) (quoting *Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014)). Beginning with the first prong, it is undisputed that Zoryan conferred a benefit upon the Defendants. However, because Zoryan and Fox Point were the sole parties to the contract, that $172,000 benefit was bestowed on Fox Point. ECF No. 20 at 4, ¶ 16; *Id.* at 10, ¶ 44; ECF No. 24 at 9. Although Mr. Bogosian may have benefitted from the money Zoryan contributed for the film, in his role as sole member of the Defendant LLC[5], he was not, in his individual capacity, a party to the contract for which the benefit was made. ECF No. 20 at 10, ¶ 46. It cannot be said that Mr. Bogosian

---

[5] *See Doe v. Gelineau*, 732 A.3d 43, 44-45 (R.I. 1999) ("courts are not inclined to perforate a corporation's legal shell merely to stick one or more of its constituent or affiliated entities with liability for the corporation's misdeeds").

personally received a benefit from Zoryan's monetary contribution to Fox Point. Therefore, the first prong cannot be satisfied and Zoryan's unjust enrichment claim against Mr. Bogosian fails. The Court dismisses Count III against Mr. Bogosian.

### B. Whether the Complaint Plausibly Alleges a Breach of Fiduciary Duties

Zoryan and Fox Point entered a contract on April 15, 2015. *Id.* at 4, ¶ 16. Zoryan alleges that on February 20, 2016, Mr. Bogosian was selected to become a member of the Zoryan board and served between 2016-2019 and thus owed fiduciary duties to Zoryan. *Id.* at 10-11, ¶¶ 49, 50.[6] The alleged breach of the contract, and breach of those fiduciary duties supporting claims in Count IV occurred in 2022. *Id.* at 5, ¶ 22. Defendants respond that dismissal is called for because Mr. Bogosian was not a board member from 2014 onward or a party to the contract. ECF No. 24 at 10.

To properly allege breach of fiduciary duty, a plaintiff must state: "(1) the existence of a fiduciary duty; 2) breach of that duty; and 3) damage proximately caused by the breach." *Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv., Inc.,* No. Civ.A.PB 01-3522, 2004 WL 877599, at *13 (R.I. Super. Ct. Apr. 21, 2004) (quoting *Griffin v. Fowler*, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003)). A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice to benefit another upon matters within the scope of the relationship. Restatement (Second) Torts § 874.

---

[6] In support of this allegation, Zoryan references the meeting minutes, which corroborate Mr. Bogosian's presence ("Exhibit C"). Also referenced are the meeting minutes from November 2, 2019 ("Exhibit D").

7

Rhode Island has recognized that corporate officers and directors stand in a fiduciary capacity. *A. Teixeira & Co. v. Texeira*, 699 A.2d 1383, 1386 (R.I. 1997) (citing *Boss v. Boss*, 200 A.2d 231 (R.I. 1964)). Zoryan has alleged that Mr. Bogosian was a Zoryan board member and attached some evidence showing the allegations are at least plausible. So, pleading that Mr. Bogosian had a fiduciary duty to Zoryan.

Mr. Bogosian and Zoryan also may have had an agency relationship. According to the Restatement (Third) of Agency, an agent "may not act without the principal's consent on behalf of another principal when there is a substantial risk that the agent's action on behalf of one principal would be materially and adversely affected by action by the agent to fulfill duties owed to another principal." Restatement (Third) of Agency § 1.01. Two or more co-principals may appoint an agent to act on their behalf in the same transaction or matter. *Id.* § 3.16. As a member of the Zoryan board of directors, Mr. Bogosian would have effectively assented to act on its behalf.

That said, Mr. Bogosian cannot act as an agent for both Fox Point and Zoryan. Zoryan does not allege that it agreed that Mr. Bogosian could simultaneously act on behalf of Fox Point.[7] Zoryan and Fox Point did not explicitly agree that Mr. Bogosian would act as an agent on behalf of both. The provision does not require that the principals give explicit authorization, it simply requires "consent." *Id.* cmt. b. On the face of the Complaint, it is plausible that Zoryan has impliedly consented to Mr.

---

[7] There is also a substantial risk that Mr. Bogosian's actions as an agent on behalf of Fox Point would be "materially and adversely affected" by his actions as an agent of Zoryan, as shown by the nature of the contractual relationship. Any actions Mr. Bogosian took for either principal would "adversely [affect]" the other.

8

Bogosian acting as an agent for Fox Point regarding the contract. Zoryan knew or should have known of Mr. Bogosian's affiliation with Fox Point before the agreement was entered. ECF No. 20 at 3, ¶ 13. By allowing Mr. Bogosian to join Zoryan's board of directors, Zoryan has consented that Mr. Bogosian could act as an agent for both Fox Point and Zoryan. Zoryan has thus plausibly alleged the first element of a breach of fiduciary duty claim.

Zoryan plausibly asserts a breach of fiduciary duty by alleging that "Mr. Bogosian failed to produce the [f]ilm according to the terms agreed upon." *Id.* at 11, ¶ 51. Taking Zoryan's allegations as true, Mr. Bogosian breached the duty of care under § 8.08 when he did not give Zoryan credit, in direct breach of the agreement. *Id.* It is also plausible that Mr. Bogosian breached the duty of care when he allegedly "created the 2022 [v]ersion how he desired instead of abiding by his obligations and promises to Zoryan" and "gave credit to himself and other scholars, as opposed to Zoryan." *Id.* Although the duty of diligence[8] requires only that reasonable efforts be made, Zoryan alleges that Mr. Bogosian did not make reasonable efforts on its behalf while acting as a board member. The second prong has thus been met.

The third prong requires proof that the breach proximately caused damages. "[P]roximate cause is established by showing that but for the negligence of the

---

[8] An agent has a fiduciary duty to act loyally for the principal's benefit in matters related to the agency relationship. Restatement (Third) of Agency § 8.01. An agent also has a duty to the principal to act with "care, competence, and diligence normally exercised by agents in similar circumstances." Restatement (Third) of Agency § 8.08. Additionally, an agent's duty of diligence is to "make reasonable efforts to achieve a result." Restatement (Third) of Agency § 8.08 cmt. d.

9

tortfeasor, injury to the plaintiff would not have occurred." *Geloso v. Kenny*, 812 A.2d 814, 818 (R.I. 2002) (quoting *English v. Green*, 787 A.2d 1146, 1151 (R.I. 2001)). Zoryan alleges that Mr. Bogosian engaged in such conduct for his benefit and to the detriment of Zoryan because he knew or should have known that his conduct was likely to cause Zoryan harm. ECF No. 20 at 11, ¶ 52. Zoryan also alleges that it suffered general and compensatory damages, including consequential damages as a direct and proximate cause of Mr. Bogosian's breach. *Id.* ¶ 53. Mr. Bogosian's letter to Zoryan called the film a, "once-in-a-lifetime opportunity to build on a rich editorial legacy." *Id.* at 4, ¶ 15. The Court finds that it is plausible that Fox Point's failure to credit Zoryan proximately caused its damages.

Finding that Zoryan has properly pled all three elements of a breach of fiduciary duty claim, the Court denies Defendants' Motion to Dismiss Count IV.

### C. Whether the Complaint Plausibly Alleges an Alter Ego Claim

Zoryan alleges in Count V a claim for alter ego against Defendants, contending that Fox Point and Mr. Bogosian are "one and the same." *Id.* at 12, ¶ 57. Zoryan further alleges that each Defendant acted as an "agent" in furtherance of the "joint venture." *Id.* ¶ 56.

To invoke the equitable alter ego doctrine, the following must be present:

(1) there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Transam. Life Ins. v. Caramadre*, C.A. No. 09–470 S, 2017 WL 752145, *4 (D.R.I. Feb. 27, 2017) (quoting *Heflin v. Koszela*, 774 A.2d 25, 30 (R.I. 2001)). Alter ego is a doctrine of liability not a cause of action.[9] *Vasquez v. Sportsman's Inn, Inc.*, 57 A.3d 313, 321 (R.I. 2012) ("An attempt to pierce the corporate veil is not itself a cause of action, such as tort or breach of contract"). Because Zoryan has pled alter ego as a cause of action, this "claim" fails and the Court GRANTS Defendants' Motion as to Count V.

### D. Whether the Complaint Plausibly Alleges a Fraudulent Inducement Claim

Count VI of Zoryan's Complaint alleges that Defendants fraudulently induced Zoryan to enter into the written agreement on April 15, 2015. ECF No. 20 at 4, ¶ 16; *Id.* at 14, ¶ 63. Zoryan alleges that Mr. Bogosian pitched the film as a "once-in-a-lifetime opportunity" for Zoryan to "build on its legacy." *Id.* ¶ 59. Zoryan also alleges that in relying on Mr. Bogosian's promises about how the film would be produced, Zoryan entered the agreement and provided the requested funding. *Id.* ¶ 60. Defendants move to dismiss claiming Zoryan did not "identify any statements, let

---

[9] Even if Zoryan did attach its alter ego theory to a separate cause of action, it is uncertain whether it could satisfy the pleading standards. Although courts generally decline to pierce the veils that separate one company from another and from the individuals that own them, *UST Corp. v. Gen. Rd. Trucking Corp*, 783 A.2d 931, 940 (R.I. 2001) (citing *Doe v. Gelineau*, 732 A.2d 43 (R.I. 1999)), they have recognized that there are circumstances when, in the interest of justice, it is appropriate to do so. *Id.* (citing *McFarland v. Brier*, 769 A.2d 605 (R.I. 2001)). Those circumstances are not present here. Zoryan alleges that Mr. Bogosian is the sole owner and employee of Fox Point and controls all aspects and operations of Fox Point. ECF No. 20 at 12, ¶ 57; *Id.* at 3-4, ¶ 14-16; *Id.* at 13, ¶ 59-60. While Zoryan has plausibly alleged that Mr. Bogosian and Fox Point are in unity of interest and ownership, it has articulated no inequitable, unjust, or fraudulent result that would follow. ECF No. 24 at 13.

alone misstatements" made by Mr. Bogosian in his individual capacity and did not meet the particularity threshold. ECF No. 24 at 13-14.

Fraudulent inducement is defined as, "[m]isreprentation as to the terms, quality or other aspects of a contractual relation, venture, or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties, or obligations, [they] [have] undertaken." *Schnitzer Steel Indus. v. Dingman*, 651 F. Supp. 3d 509, 514 (D.R.I. 2023) (quoting *Bourdon's, Inc., v. Ecin Indus., Inc.*, 704 A.2d 747, 753 (D.R.I. 1997)). Fraudulent inducement requires a two-part test: (1) Plaintiff [must] show that Defendant made a false representation, thus inducing Plaintiff's reliance; and (2) Plaintiff justifiably relied on this false representation. *Dingman*, 651 F. Supp. 3d at 514 (citing *W. Rsrv. Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329, 337 (D.R.I. 2012)). Put another way, a plaintiff must show that the defendant "'made a false representation intending thereby to induce [the claimaint] to rely thereon' and that the [claimant] justifiably relied thereon to his or her damage. *Bjartmarz v. Pinnacle Real Est. Tax Serv.*, 771 A.2d 124, 127 (R.I. 2001) (quoting *Travers v. Spidell*, 682 A.2d 471, 472-73 (R.I. 1996)).

Federal Rule of Civil Procedure 9(b) requires that fraud be alleged with "particularity." Zoryan has alleged that under the agreement, Defendants promised that Zoryan "[would] receive full credit and acknowledgment in the film and associated publicity for its role in the production of the film." ECF No. 20 at 4, ¶ 17. It has alleged that Defendants promised that it would be a "co-producer" and would

12

"[work] in conjunction with Zoryan scholars." *Id.* at 13, ¶ 59. All the promises Defendants allegedly made occurred before Zoryan entered the contract. It is plausible that these promises significantly influenced Zoryan's decision to enter the contract. Zoryan further alleges that the 2022 version of the film that was produced did not reference and credit Zoryan per the promises of the agreement. *Id.* at 5, ¶ 21. Accepting these allegations as true, it is plausible that Defendants made false representations that, induced Zoryan to enter the contract.

Zoryan has also adequately pled that it was justified in relying on Defendants" representations. It has stated with particularity the promises Mr. Bogosian made on behalf of Fox Point in his letter, before entering the contract, including the promise that Zoryan would co-produce and receive full credit and acknowledgement. *Id.* at 4, ¶¶ 15-17. Zoryan has also cited the agreement, which states, "in cooperation with the Zoryan Institute for Contemporary Armenian Research and Documentation… per Ted Bogosian's letter to Zoryan," which effectively makes such promises made in the contract relate back to the time before the contract for purposes of inducing reliance. *Id.* ¶ 17. Thus, the Court finds that Zoryan has plausibly alleged a claim for relief for fraudulent inducement and denies Defendants' Motion to Dismiss Count VI.

### E. Counterclaim: Whether Defendants Plausibly Alleges a Breach of Contract Claim

Count I of Fox Point's Counterclaim alleges that Zoryan breached its contractual obligations. ECF No. 23 at 4, ¶ 27. Fox Point alleges that Zoryan "failed to provide support" and "interfer[ed] with [Fox Point's] distribution of the [f]ilm." *Id.*

Fox Point further alleges that because of Zoryan's breaches, it has suffered "considerable loss, cost, damage, and expense." *Id.* ¶ 28.

To prove a breach of contract claim, "[a] plaintiff must [show] both the existence and breach of a contract, and that the defendant's breach thereof caused the plaintiff's damages." *Coccoli v. Town of Scituate Town Council*, 184 A.3d 1113, 1118 (R.I. 2018) (quoting *Fogarty v. Palumbo*, 163 A.3d 526, 541 (R.I. 2017)). It is undisputed that there was a contract between Fox Point and Zoryan and the court finds that Fox Point has plausibly alleged breach and damages. Fox Point alleges that Zoryan has breached its duty; specifically, Fox Point alleges that "without justification, [Zoryan] interfered with the promotion and distribution of the [f]ilm by issuance of cease-and-desist demands" ECF No. 23 at 3, ¶ 20; that Zoryan "actively undermined [Fox Point's] ability to have the [f]ilm aired on PBS by contacting PBS directly to argue for a presentation of a film that is not compliant[,]" *id.* at 4, ¶ 21; and that Zoryan rejected the 2022 film without justification. *Id.* at 3, ¶ 19.

As for damages, Fox Point alleges that because of Zoryan's breach, it has been injured "monetarily and reputationally" because it cannot distribute the film–the product of years of filmmaking. ECF No. 23 at 4, ¶ 24. Therefore, taking all of Fox Point's allegations as true, the Court finds that it has plausibly alleged a breach of contract claim and denies Zoryan's Motion to Dismiss Count I of the Counterclaim.

### F. Counterclaim: Whether the Defendants Plausibly Alleges a Claim of Breach of the Implied Covenant of Good Faith and Fair Dealing

Count II of Fox Point's Counterclaim alleges that Zoryan breached the implied covenant of good faith and fair dealing. *Id.* at 5. Zoryan does not address the

14

substance of Count II, but moves to dismiss it assuming that it will go away when the Court dismisses the breach of contract counterclaim in Count I. Considering its decision to deny Zoryan's motion on Count I, the Court will review whether Fox Point has plausibly alleged a breach of the covenant of good faith and fair dealing.

As with its breach of contract claims, the Court finds that it has. Under Rhode Island law, "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002). "The covenant of good faith is regarded as a counterpromise that the promisee will act in a manner consistent with the purposes of the contract." *Hord Corp. v. Polymer Rsch. Corp. of Am.*, 275 F. Supp. 2d 229, 237 (D.R.I. 2003) (quoting *A.A.A. Pool Serv. & Supply, Inc. v. Aetna Cas. & Sur. Co.*, 395 A.2d 724, 725–26 (1978). "While not every breach of contract involves a breach of the covenant of good faith and fair dealing, the claims are generally plead in parallel since every breach of the covenant implicates a breach of contract." *TG Plastics Trading Co. v. Toray Plastics (Am.), Inc.*, No. CV 09-336M, 2012 WL 12964795, at *3 (D.R.I. Mar. 21, 2012); *see Ross–Simons of Warwick, Inc. v. Baccarat Inc.*, 66 F. Supp. 2d 317, 330 (D.R.I. 1999).

Construing the Counterclaim and contract in a light most favorable to Fox Point as required at the Rule 12(b)(6) motion to dismiss stage, the Court finds that Defendants have sufficiently stated at least a "plausible" breach of the covenant of good faith and fair dealing counterclaim in Count II. The Court denies Zoryan's motion to dismiss it.

## IV. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss. ECF No. 24. The Court GRANTS Defendants' Motion as to Counts III and V and DENIES Defendants' Motion to Dismiss as to Counts IV and VI. The Court DENIES Plaintiff's Motion to Dismiss the Counterclaims. ECF No. 26.

Remaining in the case to be litigated are Counts I, II, IV, and VI in the Amended Complaint and Counts I and II of the Counterclaim.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

November 1, 2024

16