UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ZORYAN INSTITUTE FOR CONTEMPORARY ARMENIAN RESEARCH & DOCUM, *a Massachusetts Nonprofit Corporation*,<br><br>Plaintiff,<br><br>v.<br><br>FOX POINT PICTURES, LLC, *a Rhode Island Limited Liability Company*; THEODORE J. BOGOSIAN; and DOES 1-50, *inclusive*,<br><br>Defendants. | C.A. No. 24-cv-109-JJM-AEM |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Before the Court are Defendants Fox Point Pictures, LLC and Theodore J. Bogosian's (collectively "Fox Point Pictures") Motion for Summary Judgment (ECF No. 60), Plaintiff Zoryan Institute for Contemporary Armenian Research & Docum's ("Zoryan")[1] Motion for Summary Judgment on Theodore Bogosian's counterclaims (ECF No. 57), and Fox Point Pictures' Motion to Strike ECF Nos. 74 and 75 (ECF No. 76). For the reasons below, the Court grants Fox Point Pictures' Motion for

[1] Zoryan Institute is a Massachusetts nonprofit corporation "who serves the cause of scholarship and public awareness relating to issues of genocide, human rights, and diaspora-homeland relations. . . [It] was established by a group of Armenians who were intrigued by questions about Armenian history, identity, and their future as a nation" ECF No. 1 at 3.

Summary Judgment, grants Zoryan's Motion for Summary Judgment, and denies Fox Point Pictures' Motion to Strike as moot.

## I. BACKGROUND

The dispute arises out of a project to develop a sequel to Defendant Theodore Bogosian's (owner of Fox Point Pictures) 1988 Public Broadcasting Service ("PBS") documentary "An Armenian Journey," that the parties collaborated on with the goal of eventually broadcasting on PBS to commemorate the Armenian Genocide's centennial anniversary.

Fox Point Pictures sent Zoryan two letters, dated March 9 and March 13, 2015, which described the contemplated project and solicited Zoryan's financial support. ECF No. 60-1 at 8. Critically, the March 13th letter referenced "funder credits" and a prospective 2016 broadcast. Shortly over one month later, Zoryan and Fox Point Pictures executed a written contract about the film ("the Contract") and Zoryan's role in providing initial funding for it. ECF No. 62-1 at 2-3 Additionally, the Contract also referenced the parties' March 9th letter and contained recitals referencing the Rhode Island PBS guidelines and Fox Point Pictures' intent to collaborate with Zoryan. *Id.*

Over the next few years, Zoryan and Fox Point Pictures were in contact regarding the content of the film, which was screened for the first time in 2018 for Zoryan's thirty-fifth anniversary gala (the "2018 Version"). Through 2018 and into 2019, the parties continued to exchange updates regarding the film's editing, its timing, and a prospective broadcast, including statements that a broadcast date

remained to be determined. ECF No. 70 at 16-17. In early 2022, Fox Point Pictures delivered a version of the film that they identified as a final cut (the "2022 Version"). ECF No. 70 at 16-17. Zoryan contends that the 2022 Version: (1) materially differed from the 2018 Version; (2) differed from Zoryan's understanding of planned content, and (3) that the delays affected the parties' intended timing around the centennial related programming. ECF No. 70 at 16-23. Following Zoryan's discovery of the film's changes, Zoryan brought this action in this Court, which prompted Fox Point Pictures to file counterclaims against it concerning their differing understanding of their agreement to produce the film. Both parties now move for summary judgment.

## II. STANDARD OF REVIEW

The role of summary judgment is "to pierce the pleadings and to assess the proof to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of "assert[ing] the absence of a genuine issue of material fact and then support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003). "An issue is 'genuine' if it can be 'resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano*

*Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank*, N.A., 821 F.3d 206, 215 (1st Cir. 2016)).

Once the moving party has met its burden, "[t]he burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact." *Pleasantdale Condos., LLC v. Wakefield*, 37 F.4th 728, 733 (1st Cir. 2022). To satisfy this burden, the nonmovant "must present definite, competent evidence" demonstrating that a trial-worthy issue exists. *Id.* (quoting *Mesnick*, 950 F.2d at 822). "[C]onclusory allegations, improbable inferences, and unsupported speculation" are not enough. *Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 108 (1st Cir. 2024) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). The Court must "view the record in the light most favorable to the non-moving party and resolve all reasonable inferences in its favor, without weighing the evidence or evaluating the credibility of the witnesses." *Sheehan v. N. Am. Mktg. Corp.*, 610 F.3d 144, 149 (1st Cir. 2010) (citing *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006)).

## III. DISCUSSION

Zoryan brings claims for: (1) breach of contract (including an alleged denial of co-producer rights, a failure to collaborate/cooperate on content, insufficient crediting, and delay); (2) a breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) fraudulent inducement (premised on Fox Point Pictures' alleged misrepresentations regarding the film's co-production, Fox Point Pictures' intent to collaborate with scholars associated with Zoryan, the focus of the film's content, and the purported deadlines surrounding the film's completion).

Fox Point Pictures moves for summary judgment on all counts, contending: (1) Zoryan fails to identify a contractual provision that they breached; (2) any implied covenant claim is not independent of Zoryan's breach-of-contract claim; (3) unjust enrichment is unavailable where a valid contract governs; and (4) Zoryan lacks evidence of falsity, scienter, inducement intent, or reasonable reliance to support fraudulent inducement.

**A. The Parties' Interpretive Dispute**

Zoryan contends the Contract made Zoryan a co-producer with collaboration rights on production and content, with Fox Point Pictures to co-produce, collaborate, and secure a PBS broadcast, and that the parties incorporated the March 9th letter into the Contract's terms. ECF No. 70 at 2.

Fox Point Pictures characterizes the Contract as a short-term funding agreement under which Zoryan would provide $20,000 and receive funder credit—as opposed to producer credit—consistent with PBS's funding guidelines. ECF No. 60-1 at 6, 11. Additionally, Fox Point Pictures asserts that the parties' negotiations reflected their specific attention to PBS's restrictions on funder editorial control and that they selected additional language regarding the use of "independent" scholars associated with Zoryan to reflect compliance with PBS's funding guidelines. *Id.*

As for PBS's guidance itself, Zoryan argues the Contract is unclear as to which "PBS guidelines" are incorporated and contends Fox Point Pictures never provided the specific guidelines referenced by the Contract or explained their implications. ECF No. 70 at 8-10; ECF No. 60-1 at 11. Fox Point Pictures also argues that PBS

would not air a film if a funder had co-producer/editorial status and that the Contract's credit provision aligns with PBS's standards. *Id.*

Zoryan also asserts that Fox Point Pictures received about $150,000 in funding overall in connection with the film project; Fox Point Pictures emphasizes the Contract's $20,000 figure while acknowledging additional support and connections that Zoryan provided during production. ECF No. 70 at 19; ECF. No. 60-1 at 6, 13.

Zoryan counters that the Contract provided it with co-producer status and that Fox Point Pictures refused to afford the rights and credits associated with that designation; and Fox Point Pictures maintains that Zoryan was a funder, not a co-producer, and points to a 2017 poster and on-screen crediting consistent with funder recognition, not production credit. ECF. No 70 at 6; ECF. No 60-1 at 7-10, 11-12, 15.

With respect to the film's release date, Zoryan asserts the parties agreed, by reference to the March 9th letter and related communications, that production would be completed for the 2015 centennial or 2016 broadcast, and argues a multi-year delay culminating in the 2022 Version breached timing obligations. ECF. No 70 at 17-18. That said, Fox Point Pictures argues the Contract lacks a time-is-of-the-essence clause or fixed production deadline for delivery of a final film, note interim scheduling/milestone submissions, and contend that any timing obligation is not established by the Contract language. ECF No. 60-1 at 15-16.

Separately, Fox Point Pictures asserts counterclaims seeking indemnification (and related breach of by-laws) under Zoryan's corporate by-laws based on Zoryan's original fiduciary-duty claim against him, where Zoryan alleged that Mr. Bogosian

served on Zoryan's board from 2016 to 2019. Even so, Zoryan later dismissed its fiduciary-duty claim with prejudice but, according to Fox Point Pictures, did not concede the inaccuracy of its prior board-membership allegation; Fox Point Pictures also argues that Zoryan is judicially estopped from denying board membership and that the by-laws' "by reason of" nexus requirement is satisfied by the fiduciary-duty pleading. Zoryan moves for summary judgment on the counterclaims, relying on Mr. Bogosian's deposition denial of 2016-2019 board service. Fox Point Pictures opposes and seeks summary judgment on liability for indemnification, contending Mr. Bogosian's board-status is disputed and that dismissal with prejudice eliminates a "bad-faith" bar under the by-laws.

### B. Breach of Contract (Count I)

The parties' contract dispute centers on a single interpretive question: whether the Contract establishes Zoryan as a co-producer of the film, with the collaboration and content rights Zoryan claims are associated with that role, or as a funder entitled to acknowledgment credit without editorial control.

Under Rhode Island law, the interpretation of a contract is ordinarily a question of law for the Court, but only where the contract's terms are clear and unambiguous; when a term is ambiguous, its interpretation becomes a question of fact that ordinarily cannot be resolved on summary judgment. *Clark-Fitzpatrick, Inc./Franki Found. Co. v. Gill*, 652 A.2d 440, 443 (R.I. 1994); *Cappalli v. BJ's Wholesale Club, Inc.*, 904 F. Supp. 2d 184, 191 (D.R.I. 2012). A term is ambiguous if it is "reasonably susceptible of different constructions," *Westinghouse Broad. Co. v.*

*Dial Media, Inc.*, 410 A.2d 986, 991 (R.I. 1980), though the Court will not "stretch[] the imagination to read ambiguity where none is present." *Young v. Warwick Rollermagic Skating Ctr., Inc.*, 973 A.2d 553, 560 (R.I. 2009). In assessing the question, the Court reads the instrument as a whole and gives effect to each of its provisions. *In re Newport Plaza Assocs., L.P.*, 985 F.2d 640, 646 (1st Cir. 1993).

Measured against that standard, the Court's review of the Contract reveals that its plan language provides only one plausible reading with respect to Zoryan's role in the film's production. The Contract's clear, explicit, and repeated references to the parties' desire for a film to appear on PBS and in compliance with PBS's funding guidelines indicate that the parties intended to provide Zoryan with the role of a funder rather than a co-producer. To decide otherwise would ignore the references to PBS guidelines, which prohibit funders being given producer status. To be sure, the Contract uses the term "co-producing" in one instance. ECF No. 62-1 at 2. Yet "[i]n interpreting contractual language, [courts consider] the contract as a whole. Its meaning cannot be delineated by isolating words and interpreting them as though they stood alone." *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 785 (1st Cir. 2011) (cleaned up); *see also Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I. 2004) ("We also adhere to the rule of interpretation that when considering whether a contract is clear and unambiguous, the document must be *viewed in its entirety* and its language be given its plain, ordinary and usual meaning.") (cleaned up) (emphasis added).

Here, the PBS funding guidelines delineate that individuals who provide funding for films may not also serve in the role of a producer.[2] The Contract's repeated reference to PBS and its guidelines, compels the Court to conclude that the use of the term "co-producing" was meant to be interpreted in the vernacular, not a requirement for credit or editorial control. There is no reasonable reading of the entire Contract that would mandate that Fox Point Pictures lists Zoryan as a co-producer.[3] Based on this interpretation of the Contract, there is no evidence of breach. As a result, Zoryan's claim for a breach of contract fails as a matter of law and the Court grants Fox Point Pictures' Motion for Summary Judgment on Count 1.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)**

Count II alleges breach of the implied covenant of good faith and fair dealing. Under Rhode Island law, the implied covenant does not give rise to "an independent cause of action separate and apart from a claim for breach of contract." *McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015); *see Ryder v. Pearson Educ., Inc.*, 486 F. Supp. 3d 489, 502 (D.R.I. 2020). The claim therefore rises and falls with the breach-of-contract claim on which it is premised, and Zoryan's stated basis for the two claims is materially the same. Because Count I fails to survive summary judgment, and this

---

[2] The reasoning behind this prohibition is that content should be free from undue influence by third-party funders.

[3] Even though Zoryan takes issue with Fox Point Pictures' apparent inability to produce the relevant funding guidelines in operation at the time the parties reached the agreement, Zoryan does not contest the idea that these guidelines ever permitted an *alternative* funding arrangement to exist at PBS.

claim is premised on the same conduct, Count II fails as well. As a result, the Court grants Fox Point Pictures' Motion for Summary Judgment as to Count II.

**D. Unjust Enrichment (Count III)**

Count III seeks to recover based on an alternative theory of unjust enrichment. Unjust enrichment is a quasi-contractual remedy that is unavailable where a valid and enforceable express contract governs the same subject matter. *Wild Horse Concepts, LLC v. Hasbro, Inc.*, 286 A.3d 848, 851 (R.I. 2023); *Hasbro, Inc. v. Mikohn Gaming Corp.*, 491 F. Supp. 2d 256, 264 (D.R.I. 2007). The application of that rule depends on the scope of the Contract itself. Specifically, the viability of this claim hinges on whether the Contract encompasses the content and editorial contributions Zoryan claims it has supplied and is therefore resolved by the Court's construction of Zoryan's role as a funder rather than a co-producer.

Zoryan has failed to raise a genuine dispute over whether certain benefits it conferred lie outside the Contract's coverage. Because the Court concludes as a matter of law that the express Contract governs all the benefits at issue, summary judgment on the alternatively pleaded unjust-enrichment claim is appropriate. Specifically, the Court finds that Zoryan received the full benefit from the contract itself in the form of the funding credit received in the film. The Court grants Fox Point Pictures' Motion for Summary Judgment as to Count III.

**E. Fraudulent Inducement (Count IV)**

Count IV alleges fraudulent inducement. To prevail, Zoryan must establish a false representation, knowledge of its falsity, an intent to induce reliance, and justifiable, detrimental reliance. *Women's Dev. Corp. v. City of Cent. Falls*, 764 A.2d 151, 161 (R.I. 2001). Fox Point Pictures is correct that certain of the statements Zoryan identifies cannot support the claim and the "once-in-a-lifetime" language in the March 9th letter is non-actionable puffery. *A.J. Amer Agency, Inc. v. Astonish Results, LLC*, No. CA 12-351 S, 2014 WL 3496964, at *14 (D.R.I. July 11, 2014). The alleged representation that Zoryan would "co-produce" stands on similar footing. As the Court has concluded, Fox Point Pictures established that the Contract made Zoryan a funder because PBS standards forbid a funder from producing, and that they never otherwise represented Zoryan would be a co-producer. Without specific, identifiable evidence that Fox Point Pictures made a false representation outside the use of the word co-producing in the Contract, Zoryan has failed to create a disputed issue of fact preventing summary judgment on Zoryan's claim for fraudulent inducement. As a result, the Court grants Fox Point Pictures' Motion for Summary Judgment as to Count IV.

**F. Zoryan's Motion for Summary Judgment on the Counterclaims**

Separately, Zoryan moves for summary judgment on Mr. Bogosian's counterclaims for indemnification and breach of Zoryan's by-laws, relying on Mr. Bogosian's deposition testimony that he did not serve on Zoryan's board of directors between 2016 and 2019. The by-laws provide indemnification to a director who is

sued "by reason of his being or having been a director." Here, the record reveals that Zoryan erred when originally alleging that Mr. Bogosian served as a board member during this period and both parties later agreed to remove this position from Zoryan's Complaint.

Specifically, after agreeing to allow Zoryan to amend its Complaint and remove its allegations regarding Mr. Bogosian's status on its board, Fox Point Pictures cannot now use these non-operative allegations as a basis to recover on its counterclaims. The doctrine of judicial estoppel prevents Fox Point Pictures from relying on allegations from a non-operative complaint and to retroactively benefit from them. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2001) ("As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim this is inconsistent with a position taken by that litigant earlier in a prior legal proceeding or in an earlier phase of the same legal proceeding.") (cleaned up). As a result, the Court grants Zoryan's Motion for Summary Judgment and dismisses Mr. Bogosian's counterclaims against Zoryan.

## IV. CONCLUSION

There being no genuine issue of material fact, Fox Point Pictures has successfully demonstrated their entitlement to summary judgment. As a result, the Court GRANTS Fox Point Pictures' Motion for Summary Judgment (ECF No. 57), GRANTS Zoryan's Motion for Summary Judgment (ECF No. 60), and DENIES Fox Point Pictures' Motion to Strike as moot. ECF No. 76. Final judgment shall enter for

Fox Point Pictures on Zoryan's claim and for Zoryan on Theodore Bogosian's counterclaims.

IT IS SO ORDERED.

***s/John J. McConnell, Jr.***

______________________________
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 14, 2026